### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

TAKIA MARIE SMITH NELSON, individually

and as parent and next friend of

J.E.N., L.M.N.N., M.E.S., and B.M.J., minors,

Plaintiffs,

v.

Civil Action No. 1:26-cv-02493

META PLATFORMS, INC.,

TIKTOK INC.,

GOOGLE LLC,

X CORP., and DOES 1 through 25,

Defendants.

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES, PRESERVATION

## RELIEF, NARROW INJUNCTIVE RELIEF, AND JURY DEMAND

This First Amended Complaint is filed as a matter of course pursuant to Fed. R. Civ. P.

15(a)(1)(B), following removal of this action from the Superior Court of the District of

Columbia, Case No. 2026-CAB-3927, and following Defendant Meta Platforms, Inc.'s Motion to

Dismiss filed July 23, 2026. This pleading incorporates, in full and without alteration except as



**RECEIVED**

JUL 28 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

noted, the operative allegations of the original Platform-Specific Complaint for Damages, Preservation Relief, Narrow Injunctive Relief, and Jury Demand, together with the additions set forth in Paragraphs 55A, 56D, and 65A below, which are further explained in Plaintiffs' contemporaneously filed Notice of Amendment as of Right Pursuant to Fed. R. Civ. P. 15(a)(1)(B), and Motion for Leave to File a Supplemental Pleading Pursuant to Fed. R. Civ. P. 15(d).

## PRELIMINARY STATEMENT, DEFINITIONS, AND SECTION 230 CLARIFICATION

1. This complaint is narrowed to the strongest platform-specific theories. Plaintiffs allege that Caroline Jhingory initiated and escalated a repeated online campaign involving false accusations, impersonation accounts, threats involving a minor child, Social Security information, and images or identifying information concerning minor children. The platform Defendants are sued only for their own alleged independent conduct and undertakings as described below.

2. Plaintiffs intentionally do not name Caroline Jhingory as a defendant in this platform-only complaint. Her alleged conduct is pleaded as the factual source of the campaign and as necessary context for notice, harm, causation, preservation, and platform-specific operational failures. The claims asserted here are directed only to the platform Defendants and their own alleged report-routing, impersonation-review, account-linkage, child-safety, sensitive-information, livestream/monetization, reactivation, and preservation conduct.

3. Plaintiffs do not seek to impose liability on any platform Defendant merely because a third party authored, created, uploaded, or initially posted content. Plaintiffs do not plead a generalized duty to monitor, edit, publish, withdraw, or remove third-party speech. The

claims against the platform Defendants are limited to each Defendant's own alleged administration of voluntary safety/reporting undertakings, including report intake, report classification, impersonation-account review, duplicate-account linkage, child-safety routing, sensitive-information routing, live monetization controls, account-reactivation handling, and preservation of platform records after specific notice.

4. For clarity, "Challenged Material" means the specific videos, posts, stories, direct messages, livestreams, impersonation pages, cross-posts, reuploads, and account reactivations identified in Attachment A. "Platform Operational Conduct" means each platform Defendant's own report-routing, classification, escalation, account-linkage, impersonation-review, child-safety, privacy, monetization, livestream, direct-message safety, preservation, and account-administration functions. It does not mean ordinary editorial decisions to publish, withdraw, postpone, edit, or remove third-party content.

5. The operative undertaking theory is that each platform Defendant voluntarily offered specific reporting, privacy, impersonation, child-safety, harassment, sensitive-information, account-review, monetization, livestream, and preservation workflows; Plaintiffs used those workflows repeatedly; and the platform Defendants allegedly performed those undertaken workflows without reasonable care by not reasonably applying their promised intake, routing, account-administration, correlation, impersonation, monetization, and preservation processes to repeated reports bearing the same names, accounts, images, family references, minor-child references, and sensitive-information markers. Plaintiffs allege this Platform Operational Conduct increased the risk and duration of harm independent of ordinary publisher functions.

6. Attachment A is a discovery-mapping chart. It identifies the known date, specific platform(s), incident summary, report/notice channel, later workflow issue, and evidence/harm category for each known incident. Attachment A is not pleaded to impose liability for ordinary hosting of speech; it is pleaded to show notice, reliance, recurring identifiers, account patterns, safety-workflow issues, causation, damages, and preservation needs.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship, and this action was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 from the Superior Court of the District of Columbia, Case No. 2026-CAB-3927. Plaintiffs seek damages, preservation relief, narrowly tailored injunctive relief, and equitable relief.

8. Venue is proper in the District of Columbia because the pleaded controversy is tied to District events, District employment, District residency, District legal proceedings, and District injuries. Takia Marie Smith Nelson was a resident of the District of Columbia at the time of the relevant campaign escalation, was employed in the District of Columbia, and suffered injuries in the District, including termination from D.C.-based employment, reputational harm, privacy injury, and emotional distress. Takia Marie Smith Nelson later used a Woodbridge, Virginia mailing address for contact and service purposes; that current mailing address does not alter the District residency, employment, and injury facts pleaded for the relevant events.

9. The online campaign was triggered by a lawful process-service event in Washington, D.C. on or about February 19, 2025, when Takia Marie Smith Nelson served Caroline

Jhingory at Busboys and Poets in connection with D.C.-related legal proceedings. Plaintiffs allege the campaign thereafter targeted a District resident and her minor children in connection with District events, District employment, and District professional activity, including Takia Marie Smith Nelson's employment with Robert Ades & Associates, a D.C.-based law firm, from which she was terminated on or about March 17, 2025.

10. This Court has specific personal jurisdiction over each platform Defendant because the claims arise from forum-connected platform conduct and effects, including reports submitted by a District resident through each Defendant's safety, privacy, impersonation, child-safety, sensitive-information, account-review, monetization, and preservation workflows concerning District-connected harm; platform processing of those reports; platform data collection from District account activity; platform monetization of District user engagement; and the alleged failure of those platform-specific workflows to reasonably address a campaign directed at a District resident, District employment, District professional contacts, and minor children whose privacy and safety were affected in the District.

11. To the extent any Defendant contests personal jurisdiction or venue, Plaintiffs request narrowly tailored jurisdictional discovery concerning District of Columbia users, advertising, monetization, data collection, account activity, report processing, safety-workflow routing, account-linkage activity, and handling of the specific accounts, URLs, posts, messages, livestreams, and reports identified in Attachment A.

**PARTIES AND REPRESENTATIVE CAPACITY**

12. Plaintiff Takia Marie Smith Nelson is an adult individual proceeding pro se. This filing uses Plaintiff's legal name as directed for filing, while Plaintiff separately requests pseudonym treatment, redaction, and protective treatment for future public filings. Plaintiff currently uses the Woodbridge, Virginia address listed in the signature block as a mailing/contact address; Plaintiffs allege that the relevant campaign escalation, first employment termination, and substantial reputational and privacy injuries occurred while Takia Marie Smith Nelson was a District resident and D.C.-employed.

13. Takia Marie Smith Nelson brings this action individually and, subject to Court approval and any required appointment, as next friend of J.E.N., L.M.N.N., M.E.S., and B.M.J. Plaintiffs are filing a concurrent motion for appointment of a guardian ad litem and/or approval of an appropriate representative arrangement for the minor children so that the minors' privacy, safety, and litigation interests are protected without requiring public disclosure of their names.

14. J.E.N., L.M.N.N., M.E.S., and B.M.J. are minor children whose images, family relationships, school-related context, alleged welfare status, and identifying information were allegedly placed into public online circulation as part of the campaign described herein.

15. Defendant Meta Platforms, Inc. owns, operates, controls, and/or benefits from Facebook, Instagram, and Threads, including associated reporting, moderation, recommendation, ranking, advertising, monetization, data-collection, and account-enforcement systems.

16. Defendant TikTok Inc. operates, manages, controls, and/or benefits from TikTok in the United States, including related trust-and-safety, moderation, reporting, livestream, recommendation, account-enforcement, and monetization infrastructure.

17. Defendant X Corp. owns, operates, controls, and/or benefits from X, formerly Twitter, including posting, cross-posting, ranking, recommendation, moderation, reporting, notification, and monetization systems.

18. Defendant Google LLC owns, operates, controls, and/or benefits from YouTube, including video upload, recommendation, autoplay, ranking, monetization, reporting, moderation, user-retention, and account systems.

19. Defendants Does 1 through 25 include unknown subsidiaries, affiliates, agents, vendor personnel, moderators, data processors, service providers, account-system operators, trust-and-safety contractors, monetization processors, account-review personnel, preservation custodians, or other persons or entities whose identities and roles are presently unknown and may be identified through discovery.

## GENERAL FACTUAL ALLEGATIONS

20. Beginning in or about January 2025 and continuing through at least May 2026, Caroline Jhingory allegedly initiated and escalated a persistent online campaign directed at Takia Marie Smith Nelson, her minor children, and persons associated with Takia Marie Smith Nelson on one or more of Defendants' platforms.

21. The campaign allegedly included repeated accusations of prostitution, sexual solicitation, criminal conduct, dishonesty before a judge, stalking, spying, surveillance, financial fraud, and child-welfare misconduct, as well as impersonation pages, messages, stories, cross-posts, livestream activity, and references to Takia Marie Smith Nelson's family, children, law-firm employment, and Social Security information.

22. Plaintiffs allege that they repeatedly used each platform's designated reporting, privacy, impersonation, harassment, child-safety, abuse, and personal-information channels for every known occurrence on that platform. Plaintiffs further allege that the reports created notice that the same target, same nicknames, same images, same family references, same fake pages, and same categories of sensitive information were recurring across platform systems.

23. The most serious categories of Challenged Material include impersonation pages, posts and stories using Takia Marie Smith Nelson's name or image, accusations of prostitution and fraud, allegations that Takia Marie Smith Nelson's children had been taken by CPS, threats involving a minor child, false sexualized content attributed to a minor child, false accusations that a minor child was arrested for prostitution, publication of Takia Marie Smith Nelson's Social Security number, livestream monetization, and repeated account reactivation or recurrence of substantially similar identifiers.

24. Takia Marie Smith Nelson alleges concrete economic harm, including termination from Robert Ades & Associates on or about March 17, 2025 and termination from Bourdon & Tortolero on or about September 2, 2025, together with reputational harm, lost interviews, lost client/referral opportunities, diminished employability, and lost earning capacity. Plaintiffs allege these are not speculative injuries: Takia Marie Smith Nelson's supervisors or decisionmakers informed her that the online videos/posts and repeated harassment directed at the employers caused or substantially contributed to the employment terminations; clients and professional contacts also viewed or became aware of the challenged online materials. As to the September 2, 2025 Bourdon & Tortolero termination, Plaintiffs allege the decisionmakers specifically referenced or relied on

TikTok videos and online allegations about Takia Marie Smith Nelson; although Caroline Jhingory did not know where Takia Marie Smith Nelson worked because that employment was kept private, the TikTok videos were seen by the employer, created concerns about malpractice insurance, client exposure, and the firm's professional reputation, and caused or substantially contributed to the termination.

25. The minor children allegedly suffered privacy harm, fear, emotional distress, safety-related concern, and continuing risk because their images, family relationships, school-related context, alleged welfare status, and identifying information were circulated as part of the campaign. As of the date of this filing, videos and posts involving Plaintiffs' minor children, including false sexualized content and false criminal accusations directed at a minor child, remain publicly available on YouTube, X/Twitter, and Facebook despite repeated reports submitted through each platform's designated channels.

26. The representative incidents summarized below and the full chart in Attachment A are pleaded to identify the factual basis for notice, reliance, platform operational conduct, damages, preservation needs, and discovery. Plaintiffs do not allege that every incident independently creates platform liability.

**DEFENDANT-SPECIFIC PLATFORM OPERATIONAL CONDUCT**

27. Meta is alleged to have received reports concerning Facebook, Instagram, and Threads posts, stories, impersonation pages, child-related content, family images, private information, and repeated accounts. Plaintiffs allege Meta's independent conduct includes operation of cross-service report intake, report classification, impersonation-page review, account-reactivation handling, child-safety routing, privacy-routing, account-linkage, and preservation workflows. Specific examples include the reported

Instagram impersonation pages using "Victims of Takia Smith Nelson" and "300/370 pound stalker" identifiers, Threads posts using repeated nicknames and family/child references, and Facebook/Instagram posts involving child images, private family context, and alleged Social Security information. Plaintiffs allege the Meta workflows treated related reports as isolated items instead of correlating repeated account names, nicknames, images, family identifiers, child-safety flags, and prior report history.

28. TikTok is alleged to have received reports concerning TikTok videos, stories, direct messages, fake pages, impersonation accounts, livestream activity, gifts/monetization, threats, child-related content, and Social Security information. Plaintiffs allege TikTok's independent conduct includes operation of report intake, impersonation review, duplicate-account linkage, direct-message safety routing, livestream safety review, gift/monetization controls, child-safety escalation, privacy/sensitive-information workflows, and preservation workflows. Specific examples include the reported "Takia Smith Nelson Number Two" fake page, the "Victims of Takia Smith Nelson" fake page, the June 2 threat involving Takia Marie Smith Nelson's son, the May 25 TikTok Live gifts/monetization event, and the June 19 child/SSN-related reporting. Plaintiffs allege the workflows treated repeated reports as isolated events instead of correlating fake-account patterns, direct-message threats, livestream monetization flags, child-safety flags, and sensitive-information reports.

30A. Plaintiffs allege the conduct described in this complaint and Attachment A was a continuing course of conduct and continuing course of reported platform notice from January 2025 through at least May 2026. Each report, reupload, repost, duplicate account, fake page, reactivation, livestream, message, sensitive-information disclosure, child-related post, and

platform response or non-response formed part of the same continuing campaign and the same continuing damages sequence. Plaintiffs plead this continuing course to preserve all timely claims and to address any limitations, discovery-rule, continuing-tort, accrual, or damages arguments that may be raised by any Defendant.

29. Google is alleged to have received reports concerning YouTube videos and substantially similar videos connected to the same campaign. Plaintiffs allege Google's independent conduct includes YouTube report intake, privacy/safety review routing, account/video pattern review, account-enforcement workflows, and preservation workflows. Specific examples include reported YouTube videos concerning the January 22 spying accusation, March 2 and March 16 videos involving Takia Marie Smith Nelson and associates, and March 27 allegations that Takia Marie Smith Nelson lied to a judge. Plaintiffs allege the YouTube workflows treated the videos as isolated submissions instead of correlating recurring names, images, allegations, account history, prior reports, and privacy/harassment flags.

30. X is alleged to have received reports or notice concerning posts, cross-posts, child-related content, and repeated accusations involving Takia Marie Smith Nelson, her family, and sensitive personal information. Plaintiffs allege X's independent conduct includes operation of report intake, report classification, account/post pattern review, cross-post and quote-post workflows, ranking or notification processing, child-safety routing, sensitive-information routing, and preservation workflows. Specific examples include X/Twitter activity connected to the June 3 credit-card accusation, June 19 child-related content, August 14 posts, December 2 posts, and May 7, 2026 posts. Plaintiffs allege X

workflows did not reasonably correlate repeated identifiers, family/child references, prior reports, and sensitive-information flags.

31. Plaintiffs allege that the remaining platform Defendants' systems encountered recurring campaign identifiers, repeated account names, family and minor-child references, sensitive-information flags, report histories, reuploads, and cross-platform references that required reasonable report correlation, safety routing, preservation, and account-review handling within each platform's own undertaken workflows.

## REPRESENTATIVE INCIDENTS

32. On or about March 12, 2025, a video allegedly posted on Instagram, TikTok, and Facebook called Takia Marie Smith Nelson a "hooker" and "prostitute" and used sexual solicitation imagery or references. Plaintiffs allege the item was reported through available platform channels, and the operational issue is whether Meta and TikTok workflows correctly classified the reports as repeated, targeted harassment involving sexualized defamatory identifiers and prior report history, rather than processing them as isolated content disputes.

33. On or about March 15, 2025, an alleged fake TikTok page impersonating Takia Marie Smith Nelson under the name "Takia Smith Nelson Number Two," or a substantially similar name, uploaded videos about Takia Marie Smith Nelson and acted as though the account was connected to her. Plaintiffs reported the page as impersonation. The operational issue is whether TikTok's impersonation-review, duplicate-account linkage, account-identity, and preservation workflows reasonably connected that report to the repeated names, images, nicknames, and prior campaign reports.

34. On or about May 25, 2025, Caroline Jhingory allegedly went live on TikTok and made defamatory statements about Takia Marie Smith Nelson while viewers sent gifts, prizes, or monetary donations through TikTok Live. Plaintiffs reported the livestream-related conduct. The operational issue is whether TikTok's live-safety, gift/monetization, report-routing, and preservation workflows reasonably processed reports involving monetized harassment tied to an already-reported campaign.

35. On or about June 2, 2025, within TikTok messages, Caroline Jhingory allegedly threatened to have someone beat up Takia Marie Smith Nelson's son at the high school where he was playing basketball. Plaintiffs reported the threat and child-safety issue. The operational issue is whether TikTok's direct-message safety, threat-assessment, minor-child escalation, account-linkage, and preservation workflows reasonably routed and correlated the report with the prior campaign history.

36. On or about June 19, 2025, Caroline Jhingory allegedly made a video posted on Instagram, Facebook, TikTok, X/Twitter, and Threads concerning Takia Marie Smith Nelson's children, including pictures of Takia Marie Smith Nelson's children, family comments, and allegations that the children had been taken by CPS. Plaintiffs reported the child-related material through available platform channels. The operational issue is whether each platform's child-safety, privacy, report-routing, account-linkage, and preservation workflows correctly escalated reports involving minor children and repeated campaign identifiers.

37. On or about June 19, 2025, Caroline Jhingory allegedly posted Takia Marie Smith Nelson's Social Security number in connection with the same campaign. Plaintiffs reported the Social Security information through available privacy and sensitive-

information channels. The operational issue is whether the platform(s) on which the Social Security disclosure appeared correctly routed the reports through sensitive-information workflows, correlated them with prior campaign reports, preserved account/report/log data, and used its own non-editorial safety processes for sensitive identifiers.

38. On or about June 19, 2025 and continuing until approximately May 15, 2026, a fake Instagram page allegedly impersonated Takia Marie Smith Nelson and used labels such as "the 300 pound stalker" or substantially similar identifiers. Plaintiffs repeatedly reported the impersonation page and related reactivation concerns. The operational issue is whether Meta's impersonation-review, account-reactivation, account-linkage, cross-service correlation, and preservation workflows reasonably treated the page as part of the same reported campaign instead of isolated account activity.

40A. Between on or about June 20, 2025 and September 2, 2025, Caroline Jhingory allegedly posted content on TikTok, TikTok Stories, Threads, Facebook, YouTube, and X/Twitter on multiple occasions falsely claiming that Plaintiffs' minor daughter had been recorded engaging in sexual activity at her high school. Plaintiffs reported the content through available child-safety, sensitive-content, and harassment channels on each applicable platform. The operational issue is whether each platform's child-safety, sensitive-information, and report-correlation workflows reasonably escalated and correlated repeated reports involving sexualized false content attributed to a named minor child, and whether those workflows connected such reports to the prior campaign report history involving the same minor children.

40B. Between on or about June 20, 2025 and September 2, 2025, Caroline Jhingory allegedly posted content on TikTok, TikTok Stories, Threads, Facebook, YouTube, and X/Twitter on

multiple occasions falsely claiming that Plaintiffs' minor daughter had been arrested for prostitution in Virginia. Plaintiffs reported the content through available child-safety, harassment, and sensitive-information channels on each applicable platform. The operational issue is whether each platform's child-safety, report-routing, and account-correlation workflows reasonably escalated and correlated repeated reports involving false criminal and sexual accusations directed at a minor child in connection with the same ongoing campaign.

39. Attachment A contains the detailed chronology and preserves every known dated incident for notice and discovery mapping. The counts below rely on these representative incidents and Attachment A, but Plaintiffs do not contend that every item is independently actionable against every platform Defendant.

## UNDERLYING FALSE STATEMENTS, NONPARTY SOURCE CONDUCT, AND IDENTIFICATION OF HARM

40. Plaintiffs plead this section to identify the underlying false statements, sensitive-information disclosures, report history, damages, and discovery targets arising from the nonparty campaign. This section is not pleaded as a defamation count against the platform Defendants merely because third-party statements appeared on their services.

41. Through the Challenged Material described in Attachment A and summarized above, false statements of fact concerning Takia Marie Smith Nelson were published by the nonparty source of the campaign to third parties, including statements accusing or implying prostitution, sexual solicitation, criminal conduct, dishonesty before a judge, spying, stalking, surveillance, financial fraud, child-welfare misconduct, and related misconduct.

42. The statements identified Takia Marie Smith Nelson by name, image, nickname, family references, employment references, photographs, law-firm references, and other contextual markers. Plaintiffs allege that reasonably identifiable third parties understood the statements to refer to Takia Marie Smith Nelson.

43. The alleged false statements and sensitive disclosures are pleaded to show the seriousness of the reports submitted to the platform Defendants, the foreseeability of harm, the need for proper routing to impersonation, privacy, child-safety, sensitive-information, monetization, and preservation workflows, and the damages suffered by Plaintiffs.

44. Plaintiffs suffered reputational harm, emotional distress, humiliation, lost income, employment-related damages, professional injury, privacy harm, and safety-related harm. Plaintiffs do not seek to hold a platform Defendant liable in defamation unless discovery shows that the platform itself independently authored, materially contributed to, adopted, endorsed, or materially altered a specific false statement through its own non-publisher conduct.

45. The operative claims against the platform Defendants begin below and are limited to platform-specific privacy, negligent-undertaking, operational, monetization, reactivation, preservation, and narrowly tailored injunctive theories to the extent permitted by law.

## COUNT I - PUBLIC DISCLOSURE OF PRIVATE FACTS AND SENSITIVE IDENTIFYING INFORMATION

46. Plaintiffs reallege paragraphs 1 through 47.

47. The Challenged Material allegedly included private or sensitive information concerning Takia Marie Smith Nelson and the minor children, including Social Security information,

images of minor children, family relationships, school-related references, alleged child-welfare information, boyfriend information, and law-firm or employment information.

48. The disclosures were highly offensive to a reasonable person and, to the extent they concerned Social Security details, minor children, nonpublic family information, or identifying information, were not of legitimate public concern.

49. This count is limited to privacy and sensitive-information harm. Plaintiffs seek relief against platform Defendants only to the extent each Defendant's own Platform Operational Conduct involving sensitive-information workflows, impersonation-account handling, minor-child safety routing, account reactivation, monetization processing, or preservation failures increased the risk or duration of disclosure independent of ordinary publisher functions.

51A. As to Meta Platforms, Inc., Plaintiffs allege that Meta's own privacy, impersonation-review, child-safety, cross-service account-linkage, account-reactivation, and preservation workflows processed repeated reports involving Facebook, Instagram, and Threads content, minor-child images or identifiers, alleged child-welfare information, sensitive personal information, and impersonation accounts. Plaintiffs seek relief against Meta only to the extent Meta's own account-administration and workflow conduct, including alleged reactivation or reinstatement of a reported impersonation account, increased the risk or duration of privacy harm independent of ordinary publisher functions.

51B. As to TikTok Inc., Plaintiffs allege that TikTok's own report-intake, privacy, impersonation, direct-message safety, minor-child safety, sensitive-information, livestream, gift/monetization, fake-page linkage, and preservation workflows processed repeated reports involving TikTok videos, fake pages, direct messages, livestream activity, child-related

allegations, and private or sensitive identifying information. Plaintiffs seek relief against TikTok only to the extent their own operational, monetization, account, and preservation conduct increased the risk or duration of privacy harm independent of ordinary publisher functions.

51C. As to Google LLC, Plaintiffs allege that Google's own YouTube report-intake, privacy-review, safety-routing, video/account pattern-review, and preservation workflows processed reports involving YouTube videos and account activity tied to the same campaign identifiers. Plaintiffs seek relief against Google only to the extent Google's own privacy, safety, account-review, and preservation workflows increased the risk or duration of privacy harm independent of ordinary publisher functions.

51D. As to X Corp., Plaintiffs allege that X's own report-intake, safety-review, repost/quote-post processing, account-review, and preservation workflows processed reports involving X posts or reposts tied to the same campaign identifiers and private or sensitive information. Plaintiffs seek relief against X only to the extent X's own safety, account, report, and preservation workflows increased the risk or duration of privacy harm independent of ordinary publisher functions.

50. Plaintiffs suffered privacy injury, emotional distress, humiliation, safety-related harm, mitigation costs, and continuing risk of further disclosure.

## COUNT II - NEGLIGENT UNDERTAKING AND PLATFORM OPERATIONAL NEGLIGENCE AGAINST META PLATFORMS, INC.

51. Plaintiffs reallege paragraphs 1 through 52.

52. Meta voluntarily undertook, through Facebook, Instagram, and Threads reporting channels, impersonation tools, privacy forms, child-safety mechanisms, account-review workflows, cross-service account systems, and preservation workflows, to receive,

categorize, process, escalate, review, and preserve reports concerning the categories of harm identified in this complaint.

53. Plaintiffs reasonably relied on those undertakings by submitting reports to Facebook, Instagram, and Threads concerning impersonation, harassment, child images, sensitive information, false accusations, repeated account activity, reactivation, and recurrence. Plaintiffs used Meta's platform-provided workflows instead of relying solely on outside remedies. Meta's Community Standards, Instagram Community Guidelines, Help Center reporting tools, and privacy/safety reporting materials specifically tell users that impersonation accounts, harassment, child-safety concerns, and private or sensitive personal information can be reported for review and enforcement through Meta's dedicated reporting workflows. Plaintiffs relied on those specific representations when they repeatedly reported the same accounts, names, images, nicknames, child-related posts, and sensitive-information issues to Meta.

55A. On or about June 22, 2025, after Plaintiff repeatedly reported the Instagram impersonation account through Instagram's reporting mechanisms, Plaintiff escalated the matter by submitting a formal request directly to Instagram's Privacy Operations. As part of that request, Plaintiff provided government-issued identification to verify her identity and to establish that the account at issue was impersonating Plaintiff and using Plaintiff's likeness and personal information. Following that submission, Plaintiff received an unsolicited telephone call from an Instagram representative regarding Plaintiff's reports. During that conversation, the representative discussed the reported impersonation account and Caroline Jhingory's Instagram account, informed Plaintiff that the impersonation account had been removed, and further represented, in substance, that Instagram's technology would recognize Ms. Jhingory and would prevent her

from simply creating another Instagram account. Plaintiff reasonably relied upon those representations in believing that Instagram had permanently resolved the impersonation issue. Despite those representations, Plaintiff later observed that an impersonation account again appeared on Instagram, causing Plaintiff to continue submitting reports and escalating her concerns. This telephone communication was separate from Instagram's automated reporting system and involved individualized communications concerning Plaintiff's specific reports and the specific accounts at issue.

54. After receiving notice through those workflows, Meta allegedly performed the undertaken functions without reasonable care by misrouting, miscategorizing, or not reasonably correlating repeated reports across Facebook, Instagram, and Threads; by failing to link duplicate or successor impersonation accounts; by failing to apply child-safety and sensitive-information escalation; and by treating account deactivation/reactivation as an administrative workflow decision. Plaintiffs allege that any reactivation, reinstatement, or continued administrative enablement of an identified impersonation account after notice was Meta's own affirmative independent act, separate from ordinary publication of third-party speech.

56A. Each decision by Meta's own account-administration systems to reactivate, reinstate, restore, or fail to permanently prevent reactivation of the reported "the 300/370 pound stalker" Instagram impersonation account—first created on or about June 19, 2025 and allegedly not finally deactivated until on or about May 15, 2026—constitutes an affirmative independent administrative act by Meta. Plaintiffs allege that this account-reactivation conduct is Meta's own account-administration conduct, not a decision to publish or withdraw third-party speech, and therefore is not immunized by 47 U.S.C. § 230.

56A-1. Plaintiffs' Instagram report history, accessible within Instagram's own application, documents no fewer than nineteen separate report submissions against the carolinejhingory account and content, the takia_marie_nelson_victim account, the_370lb_liar account, the takia.nelson account, and the takianelson account, spanning January 13, 2025 through May 5, 2026. Meta's own report response records document the following specific sequence with respect to the account the_370lb_liar: on or about July 29, 2025, Meta confirmed removal of the_370lb_liar's account for violations of its Community Standards on harassment and bullying. The account was subsequently reactivated on Instagram. On December 17, 2025, following Plaintiffs' renewed report, Meta's review team responded that the_370lb_liar's account does not go against our Community Standards on impersonation. Three days later, on December 20, 2025, following Plaintiffs' continued reporting, Meta again confirmed removal of the_370lb_liar's account for impersonation violations. Meta's own records therefore document that its review systems cleared an account in December 2025 that its own removal systems had found violative in July 2025 and again in December 2025, establishing that Meta's report-review and account-administration workflows produced internally inconsistent outcomes with respect to the same account using the same harassment identifier targeting Plaintiff Takia Marie Smith Nelson across the same reporting period.

56A-2. Plaintiffs' Threads report history documents reports submitted against the carolinejhingory account and content spanning August 27, 2025 through January 17, 2026. Following removal of the primary carolinejhingory account on Threads, successor accounts were created using the same identifying name with numeric variations, specifically carolinejhingory522 reported on January 10 and January 15, 2026, and carolinejhingory2 reported on January 17, 2026. Plaintiffs allege that Meta's Threads account-creation and report-

correlation workflows did not prevent the creation or operation of those successor accounts despite the documented prior report history associated with the primary account name, and that Meta's shared infrastructure between Instagram and Threads should have enabled cross-platform correlation of report histories associated with the same account name and campaign identifiers but failed to do so.

56A-3. With respect to Facebook specifically, Plaintiffs' Facebook report history documents reports submitted against Caroline Jhingory's posts on April 1, 2025 and April 16, 2025. Facebook's own support message system documents the following sequence for each report. For the April 1, 2025 report, Facebook confirmed receipt on April 1, 2025 at 5:15 PM stating, "we received your report and we'll notify you when your report has been reviewed," and subsequently responded on April 8, 2025 at 5:15 AM stating, "we didn't remove the post" and specifically that, "in this case, we did not remove the content you reported," after using a combination of technology and human reviewers to process the report. For the April 16, 2025 report, Facebook confirmed receipt on April 16, 2025 at 3:19 AM stating, "we received your report," and subsequently responded on April 22, 2025 at 3:19 PM stating, "we didn't remove the post" and that, "in this case, we did not remove the content you reported," after using a combination of technology and human reviewers to process the report. Plaintiffs allege that Facebook's affirmative determination not to remove reported content connected to the same campaign—made by Facebook's own combination of technology and human reviewers after specific written notice through Facebook's designated reporting channel, with Facebook's own written confirmation of receipt and review—constitutes performance of Facebook's undertaken review and safety workflows without reasonable care. Plaintiffs further allege that this affirmative clearance decision constitutes Facebook's own independent review conduct not

immunized by 47 U.S.C. § 230. Plaintiffs additionally allege that the campaign's presence on Facebook forced Plaintiffs to restrict their Facebook account to private status and remove personal family photographs of minor children from public access, causing concrete dignitary and privacy harm independent of any specific content moderation decision.

56B. As a direct and proximate result of Meta's workflow failures, including the alleged failure to reasonably apply promised correlation workflows to repeated impersonation reports, the alleged failure to reasonably connect Facebook, Instagram, and Threads reports involving the same target identity, and the alleged reactivation or persistence of the reported Instagram impersonation account, reported videos, posts, stories, and impersonation-page materials were not resolved through Meta's promised account, impersonation, and child-safety workflows before being viewed by Takia Marie Smith Nelson's employers, clients, and professional contacts. The Meta-accessible materials included law-firm, employment, family, child-related, and identity-based references described in Attachment A, including posts and pages tying Takia Marie Smith Nelson to prostitution, criminality, fraud, child-welfare allegations, and professional misconduct. Plaintiffs allege this exposure is not speculative: supervisors or decisionmakers at Robert Ades & Associates and Bourdon & Tortolero told Takia Marie Smith Nelson that the videos/posts and related harassment directed at the employers caused or substantially contributed to her terminations on or about March 17, 2025 and September 2, 2025, and clients or professional contacts also viewed or became aware of the challenged materials. To the extent Defendants contend the employers or professional contacts viewed different URLs, accounts, or platform displays, those facts are within the scope of requested discovery and preservation.

56C. Plaintiffs allege that Meta's repeated reactivation, reinstatement, restoration, or failure to permanently prevent reactivation of a specifically reported impersonation account over a period

of approximately eleven months, despite repeated privacy, impersonation, child-related, and sensitive-information reports, constitutes willful conduct or conscious disregard for Plaintiffs' safety, privacy, and rights, warranting punitive damages to the extent permitted by District of Columbia law.

56D. On information and belief, and based on Plaintiff's personal observation of Caroline Jhingory's own public posts, Ms. Jhingory has, on multiple occasions, stated that her ability to monetize content had been suspended or restricted by Meta, describing this in her own words as being in "Instagram jail" or "Facebook jail," in connection with policy-violation findings tied to the same reported accounts and content at issue in this Complaint. Plaintiffs allege that these public statements by Ms. Jhingory reflect Meta's own internal monetization-eligibility determinations concerning the same reported content and accounts, and that these determinations are further evidence of Meta's own direct, repeated engagement with the reported campaign through mechanisms independent of any single editorial decision to publish, withdraw, or remove specific content. Plaintiffs are not presently in possession of Meta's internal monetization-eligibility records reflecting the specific basis, scope, or duration of any such restriction, and intend to seek that information in discovery.

55. Plaintiffs allege Meta's cross-service account-linkage, impersonation-review, reactivation-review, child-safety routing, sensitive-information routing, and report-preservation conduct increased the risk and duration of harm by preventing reasonable correlation of the same campaign identifiers, account patterns, reports, images, nicknames, minor-child references, and sensitive-information markers. Plaintiffs further allege that Meta acted willfully, maliciously, or with conscious disregard to the extent discovery shows Meta had actual notice of impersonation, child-safety, or sensitive-

information reports and nonetheless affirmatively reactivated, reinstated, enabled, monetized, or failed to preserve records for the same identified accounts or materially related successor accounts.

## COUNT III - NEGLIGENT UNDERTAKING AND PLATFORM OPERATIONAL NEGLIGENCE AGAINST TIKTOK INC.

56. Plaintiffs reallege paragraphs 1 through 57.

57. TikTok voluntarily undertook, through TikTok reporting tools, impersonation reports, privacy reports, child-safety systems, livestream safety tools, direct-message systems, duplicate-account systems, repeat-upload tools, account-review workflows, monetization controls, and preservation workflows, to receive, categorize, process, escalate, review, and preserve reports concerning the categories of harm identified in this complaint.

58. Plaintiffs reasonably relied on those undertakings by using TikTok's designated reporting and safety channels for fake pages, impersonation accounts, videos, stories, direct messages, minor-child posts, threats, Social Security information, livestream activity, gifts/monetization, repeated uploads, and substantially similar accounts. Plaintiffs used TikTok's platform-provided workflows instead of relying solely on outside remedies. TikTok's Community Guidelines, Safety Center materials, report-a-problem workflows, privacy-reporting materials, and livestream/reporting features specifically tell users that impersonation, harassment, threats, minor-safety concerns, livestream abuse, and disclosure of sensitive personal information can be reported for platform review, safety handling, feature restrictions, or account enforcement. Plaintiffs relied on those specific representations when they submitted repeated campaign-specific reports to TikTok.

59. After receiving notice through those workflows, TikTok allegedly performed the undertaken functions without reasonable care by misrouting, miscategorizing, or not reasonably correlating reports involving fake accounts, repeated messages, minor-child threats, Social Security information, direct messages, and livestream activity. Plaintiffs further allege that TikTok's processing of livestream gifts, prizes, creator monetization, TikTok Live payment flows, and commercial engagement signals during reported harassment constituted TikTok's own commercial activity, not publication of third-party speech. This theory is directed to TikTok's administration of monetization and live-commerce controls after notice, not to the ordinary editorial decision whether to publish or remove a user's words.

61A. On or about May 25, 2025, TikTok's own gift-processing and revenue systems allegedly completed financial transactions on behalf of viewers during a TikTok Live harassment session at a time when prior reports concerning the same campaign had already been submitted. Plaintiffs allege that TikTok's processing of gifts through its own commercial infrastructure is TikTok's own independent commercial conduct—the generation, processing, and retention or allocation of revenue—and is not publication of third-party speech. Plaintiffs further allege that 47 U.S.C. § 230(c)(1) does not immunize a platform's own commercial monetization activity when the claim is based on the platform's revenue-processing conduct rather than the content of third-party speech.

61B. As a direct and proximate result of TikTok's workflow failures, including the alleged failure to reasonably apply promised workflows to repeated fake-page reports, the alleged failure to reasonably connect at least three reported fake pages using the same target identity, the alleged failure to route the reported minor-child threat through appropriate safety escalation, and the

alleged processing of gifts during a reported harassment livestream, TikTok videos, stories, messages, livestream materials, and impersonation pages connected to the same campaign were not resolved through the promised report and safety workflows before being viewed by Takia Marie Smith Nelson's employers, clients, and professional contacts. Plaintiffs further allege that the March 17, 2025 report of the TikTok impersonation account identified as Takia Smith Nelson 2 occurred on the exact date of Takia Marie Smith Nelson's first employment termination, reinforcing the temporal connection between the TikTok-reported impersonation activity, employer exposure, and employment harm. The TikTok-accessible materials included law-firm, employment, family, child-related, and identity-based references described in Attachment A, including videos and fake pages tying Takia Marie Smith Nelson to prostitution, criminality, fraud, child-welfare allegations, and professional misconduct. Plaintiffs allege this exposure is not speculative: supervisors or decisionmakers at Robert Ades & Associates told Takia Marie Smith Nelson that videos/posts and related harassment directed at the employer caused or substantially contributed to her termination on or about March 17, 2025. Plaintiffs further allege that decisionmakers at Bourdon & Tortolero terminated her on or about September 2, 2025 based on TikTok videos and online allegations, including concerns that clients could see the videos and that the allegations could affect malpractice-insurance or law-firm risk. Plaintiffs allege Caroline Jhingory did not know the identity or location of the second employer because Takia Marie Smith Nelson kept that employment private, and that the TikTok videos themselves reached the employer and caused or substantially contributed to the termination. To the extent Defendants contend the employers or professional contacts viewed different URLs, accounts, or platform displays, those facts are within the scope of requested discovery and preservation.

61C. Plaintiffs allege that TikTok's processing of gift revenue during a harassment livestream after prior campaign-specific reports, together with TikTok's alleged failure to reasonably apply promised correlation workflows to multiple reported fake pages using the same target identity and the same impersonation pattern, constitutes willful conduct or conscious disregard for Plaintiffs' safety, privacy, and rights, warranting punitive damages to the extent permitted by District of Columbia law.

61D. Plaintiffs' TikTok system notification history documents that a TikTok account operating under the name Victim of Takia Marie Nelson—an account whose name alone incorporated Plaintiff's full legal name as a harassment identifier—posted videos, photos, and account content that Plaintiffs reported to TikTok on April 20, April 21, and April 22, 2025. Plaintiffs allege that TikTok's account-creation workflows permitted the creation and operation of an account whose name alone incorporated Plaintiff's full legal name as a harassment identifier, and that TikTok's review system returned Status: No violations findings on content reported from this account during this period despite the account name constituting a targeted personal identifier in violation of TikTok's own Community Guidelines on harassment.

61E. Unlike a platform that failed to respond to Plaintiffs' reports, TikTok's system notification history documents that TikTok actively reviewed multiple reported videos from the Caroline Jhingory account and affirmatively determined they did not violate Community Guidelines, returning Status: No violations findings on reported content including content posted on June 19, 2025—the date of the video falsely claiming Plaintiffs' minor children were taken into CPS foster care while simultaneously displaying a Virginia court records search for Plaintiff's full legal name. Plaintiffs allege that TikTok's affirmative clearance of reported content involving minor children, false child-welfare accusations, and sensitive personal information, after specific

notice through TikTok's designated reporting channels, constitutes performance of TikTok's undertaken safety and child-protection workflows without reasonable care and constitutes TikTok's own independent review conduct not immunized by 47 U.S.C. § 230(c)(1).

61F. Plaintiffs' TikTok system notification history further documents that Plaintiffs submitted reports concerning Caroline Jhingory's videos on December 1, December 2, December 4, December 6, December 7, December 13, December 19, and December 26, 2025—nearly daily reporting across an entire month. TikTok's review system returned multiple Status: No violations findings across this reporting period. Plaintiffs allege that TikTok's repeated affirmative clearance of reported content across a sustained daily reporting period demonstrates a systematic failure of TikTok's report-review workflows to appropriately weigh the cumulative report history associated with the same account and campaign across the same reporting period.

61G. Plaintiffs' TikTok system notification history further documents that on November 19, 2025, Plaintiffs reported a direct message from account user98472816804 for violating TikTok's Community Guidelines. Plaintiffs allege that the campaign against Plaintiff Takia Marie Smith Nelson extended into TikTok's direct messaging system, and that TikTok's direct message abuse reporting workflows constitute a separate undertaken safety workflow whose performance is also at issue in this litigation.

61H. Plaintiffs' TikTok report history further documents multiple instances where TikTok's system returned a Status: Deleted response, indicating that reported content was deleted by the creator before TikTok completed its review, and that TikTok closed those reports without action upon creator deletion. Plaintiffs allege that this pattern—in which content was posted, reported, deleted by the creator, and immediately reposted in new form—was a recurring feature of the campaign documented in Attachment A, and that TikTok's workflow of closing reports upon

creator self-deletion without correlating the deletion to the prior report history or the account's cumulative violation pattern constitutes a workflow design failure independent of any individual editorial judgment.

60. Plaintiffs allege TikTok's fake-page correlation, direct-message safety routing, minor-child threat routing, livestream monetization-control, duplicate-account linkage, and preservation conduct increased the risk and duration of harm by preventing reasonable correlation of the same campaign identifiers, fake-account patterns, direct-message reports, livestream reports, minor-child threat indicators, Social Security information, and monetization events. Plaintiffs further allege that TikTok acted willfully, maliciously, or with conscious disregard to the extent discovery shows they had actual notice of impersonation, minor-child threats, Social Security information, or live monetization during reported harassment and nonetheless continued to process, retain, or benefit from live gifts, monetization events, or account-level commercial features tied to the identified campaign.

## COUNT IV - NEGLIGENT UNDERTAKING AND PLATFORM OPERATIONAL NEGLIGENCE AGAINST GOOGLE LLC

61. Plaintiffs reallege paragraphs 1 through 62.

62. Google voluntarily undertook, through YouTube reporting, privacy/safety review, account/video pattern review, account-review, and preservation workflows, to receive, categorize, process, escalate, review, and preserve reports concerning the categories of harm identified in this complaint.

63. Plaintiffs reasonably relied on those undertakings by reporting YouTube videos and related harmful content concerning Takia Marie Smith Nelson and persons associated

with her. Plaintiffs used YouTube's platform-provided reporting and privacy workflows instead of relying solely on outside remedies. YouTube's Community Guidelines, privacy complaint process, harassment/cyberbullying policy, Help Center reporting tools, safety reporting materials, impersonation policy, and child-safety enforcement. Plaintiffs relied on those specific representations when they reported videos and account activity connected to the same campaign.

65A. As of July 24, 2026—after the filing of this action, after removal to this Court, and after Defendant Meta Platforms, Inc.'s motion to dismiss—a YouTube channel impersonating Plaintiff remains active and publicly accessible. The channel displays the name "Takia Marie Nelson aka Takia Smith Nelson" under the handle @TakiaMarieNelsonakaTakiaSmithN, and hosts four videos. Plaintiff alleges, on information and belief, that these four videos were created by Caroline Jhingory and were posted not only to this YouTube channel but also cross-posted to other impersonation accounts and pages associated with the same campaign described elsewhere in this Complaint. The continued presence of this channel, more than six weeks after this action was filed and after Defendant Google LLC was served, demonstrates the continuing and ongoing nature of the harm alleged in this Complaint and the continuing failure of Google's own report-review and account-administration workflows to resolve reports concerning this specific, identified channel.

64. After receiving notice through those workflows, Google allegedly performed the undertaken functions without reasonable care by misrouting, miscategorizing, or not reasonably correlating YouTube reports involving the same names, images, allegations, accounts, video patterns, and prior report history; not reasonably routing privacy, harassment, impersonation, or child-safety reports through the appropriate review

workflows; not reasonably maintaining records showing account/video review, report processing, and preservation decisions; and not reasonably preserving report histories, video identifiers, account identifiers, and system-processing records after litigation and safety notices made preservation foreseeable.

66A. Plaintiffs allege that despite repeated reports submitted through YouTube's designated reporting channels concerning child-related content, minor-child images, false sexualized content attributed to a minor child, false criminal accusations directed at a minor child, harassment, and sensitive personal information connected to the same identified campaign, Google did not respond to, act upon, communicate any disposition of, or take any action on Plaintiffs' reports. Plaintiffs further allege that the challenged videos concerning Takia Marie Smith Nelson's minor children remain available on YouTube as of the date of this filing. Plaintiffs allege that complete non-response to reports involving minor children and sensitive identifying information, after specific and repeated notice through YouTube's own designated channels, constitutes performance of YouTube's undertaken reporting and safety workflows without reasonable care. Plaintiffs also allege that Google's own ad-serving and monetization systems generated and processed revenue on reported videos at a time when prior reports concerning the same campaign had already been submitted and ignored, and that this revenue processing constitutes Google's own independent commercial conduct not immunized by 47 U.S.C. § 230(c)(1).

66B. Plaintiffs further allege that their YouTube report history does not fully reflect the volume of reports submitted to Google concerning Caroline Jhingory's videos because YouTube's own reporting history system explicitly states that reports filed for content that has been deleted by the creator cannot be shown. Plaintiffs allege that the pattern of content deletion following reports—a pattern documented across multiple platforms in this litigation through TikTok's own

system notifications showing Status: Deleted responses—resulted in the systematic erasure of Plaintiffs' YouTube report records through the same delete-and-repost mechanism that is itself a central workflow failure alleged in this complaint. Plaintiffs allege that this mechanism, whereby a creator may erase a reporter's documentation of their own reports simply by deleting and reposting content, represents an independent workflow design failure by Google that compounds the harm caused by the underlying campaign. Plaintiffs will seek production of complete YouTube report logs through discovery, including all records of reports associated with subsequently deleted content, as those records exist within Google's internal systems regardless of what is displayed to users in the public-facing reporting history interface. Plaintiffs further allege that the absence of visible report records in YouTube's user-facing interface should not be construed as evidence that reports were not submitted, and that Google's internal systems contain the complete record of all reports submitted by Plaintiffs during the campaign period.

65. Plaintiffs allege Google's alleged YouTube privacy/safety routing, account/video pattern review, report-correlation, and preservation-workflow failures increased the risk and duration of harm by preventing reasonable correlation of the same campaign identifiers, video patterns, account history, prior reports, privacy/safety flags, and evidence-preservation needs. The duty alleged is a duty to perform voluntarily undertaken YouTube reporting, privacy/safety review, account/video pattern review, account-review, and preservation workflows with reasonable care, not a generalized duty to remove third-party speech.

67A. As a direct and proximate result of Google's alleged workflow failures, including the alleged failure to reasonably apply promised YouTube workflows to repeated reports involving the same campaign identifiers, substantially similar videos concerning Takia Marie Smith Nelson

were not resolved through YouTube's promised account/video and privacy-review workflows before being viewed by employers, clients, or professional contacts. Plaintiffs allege supervisors or decisionmakers at both terminated employments told Takia Marie Smith Nelson that online videos/posts and harassment directed at the employers caused or substantially contributed to her terminations, and Plaintiffs seek discovery and preservation to identify the specific URLs, account displays, platform records, search/view records, and employer-facing materials involved.

## COUNT V - NEGLIGENT UNDERTAKING AND PLATFORM OPERATIONAL NEGLIGENCE AGAINST X CORP.

66. Plaintiffs reallege paragraphs 1 through 67A.

67. X voluntarily undertook, through X Rules, Help Center reporting tools, abusive-behavior reporting materials, private-information reporting, impersonation/authenticity reporting, account-review workflows, safety workflows, and preservation workflows, to receive, categorize, process, escalate, review, and preserve reports concerning harassment, threats, impersonation-related abuse, disclosure of private or sensitive information, child-related content, repeated posts, cross-post patterns, and account/post identifiers connected to the categories of harm identified in this Complaint.

68. Plaintiffs reasonably relied on those undertakings by reporting or providing notice of posts and cross-platform materials involving Takia Marie Smith Nelson, her family, minor children, and sensitive personal information. Plaintiffs used X's platform-provided reporting workflows instead of relying solely on outside remedies. X's Rules, Help Center reporting tools, abusive-behavior policy, private-information policy, and impersonation/authenticity reporting materials specifically tell users that harassment, threats, impersonation-related conduct, and disclosure of private or sensitive information

can be reported for X review and enforcement. Plaintiffs relied on those specific representations when they reported posts, cross-post patterns, family/child references, and sensitive-information issues connected to the campaign.

69. After receiving notice through those workflows, X allegedly performed the undertaken functions without reasonable care by misrouting, miscategorizating, or not reasonably correlating reports involving repeated accusations, child-related content, sensitive information, family identifiers, account/post patterns, cross-post or quote-post activity, and prior report history; not reasonably routing minor-child or sensitive-information reports through appropriate safety workflows; not reasonably maintaining records showing notification, ranking, cross-post, quote-post, account-review, and report-processing decisions; and not reasonably preserving report histories, account identifiers, post identifiers, and system-processing records after litigation and safety notices made preservation foreseeable.

71A. Plaintiffs allege that they submitted reports through X's designated in-app reporting channels concerning Caroline Jhingory's posts and content throughout the campaign period spanning January 2025 through the date of this filing. Unlike Instagram, TikTok, and Facebook, X does not provide users with an accessible public-facing report history interface, and X's internal report processing records are not available to Plaintiffs outside of discovery. Plaintiffs are therefore unable to produce a report history log for X comparable to those produced for other platform defendants, not because reports were not submitted, but because X's system does not provide users with accessible confirmation records or report history documentation. Plaintiffs will seek production of X's complete internal report logs through discovery, including all records of reports submitted by Plaintiffs during the campaign period. Plaintiffs further allege that

despite repeated reports submitted through X's designated reporting channels concerning content involving Plaintiff Takia Marie Smith Nelson, her minor children, false sexualized content attributed to a minor child, false criminal accusations directed at a minor child, sensitive personal information including Plaintiff's Social Security number and home address, and harassment connected to the same identified campaign, X did not respond to, act upon, or communicate any disposition of Plaintiffs' reports. Plaintiffs further allege that content posted by Caroline Jhingory concerning Plaintiff Takia Marie Smith Nelson and her minor children remains available on X as of the date of this filing despite Plaintiffs' repeated reports, and that X's complete non-response to reports involving minor children and sensitive identifying information after specific and repeated notice through X's own designated reporting channels constitutes performance of X's undertaken reporting and safety workflows without reasonable care. Plaintiffs additionally allege that X's failure to maintain an accessible user-facing report history system is itself a workflow transparency failure that disadvantages reporting users and compounds the harm caused by the underlying campaign.

70. Plaintiffs allege X's alleged report-intake, repost/quote-post pattern review, private-information routing, safety routing, and preservation-workflow failures increased the risk and duration of harm by preventing reasonable correlation of the same campaign identifiers, post/cross-post patterns, report history, minor-child and sensitive-information flags, and evidence-preservation needs. The duty alleged is a duty to perform voluntarily undertaken reporting, safety, and preservation workflows with reasonable care, not a generalized duty to remove third-party speech.

72A. As a direct and proximate result of X's alleged workflow failures, including the alleged failure to reasonably apply promised workflows to reports involving the same target identity,

cross-post patterns, report histories, and safety concerns, challenged posts and cross-posts connected to the same campaign were not resolved through the promised report and safety workflows before being viewed by employers, clients, or professional contacts. Plaintiffs allege supervisors or decisionmakers at both terminated employments told Takia Marie Smith Nelson that online videos/posts and harassment directed at the employers caused or substantially contributed to her terminations, and Plaintiffs seek discovery and preservation to identify the specific URLs, account displays, platform records, repost/quote-post records, and employer-facing materials involved.

## COUNT VI - NARROWLY TAILORED PRESERVATION AND INJUNCTIVE RELIEF

71. Plaintiffs reallege paragraphs 1 through 72A.

72. Plaintiffs seek preservation of records relating to the specific accounts, URLs, posts, videos, stories, messages, direct messages, reports, moderation actions, appeals, monetization, live gifts, reactivation, impressions, cross-posts, recommendations, ranking decisions, account-linkage data, repeat-upload indicators, and account-enforcement records identified in Attachment A.

73. Plaintiffs allege preservation is warranted because Plaintiffs repeatedly reported the same campaign and because litigation or litigation-related preservation was reasonably foreseeable once repeated reports, privacy complaints, impersonation complaints, child-safety complaints, and Social Security information complaints were submitted and once the present dispute began. This request is pleaded as ancillary relief and not as an independent damages count.

74. Plaintiffs seek preservation of internal records showing how Defendants received, categorized, routed, escalated, reviewed, denied, acted upon, or otherwise processed

Plaintiffs' reports concerning impersonation, harassment, child-safety, privacy, doxxing, threats, Social Security information, direct messages, livestream monetization, and account reactivation.

75. Plaintiffs seek preservation of records concerning whether the identified Challenged Material was processed through any non-content administrative workflow, including report intake, classification, escalation, account-linkage review, impersonation review, child-safety routing, sensitive-information routing, monetization-control review, livestream/gift processing, recommendation/ranking logs, reinstatement/reactivation records, or preservation-hold systems after reports were submitted.

76. Plaintiffs seek narrowly tailored injunctive relief, to the extent permitted by law, limited to preservation of specified records; prevention of reactivation of specifically identified impersonation accounts; preservation and restriction of specifically identified Social Security disclosures identified in Attachment A and/or confirmed through discovery; preservation of records for identified minor-child images or identifiers; and preservation of records for specific URLs, accounts, livestreams, direct messages, report tickets, monetization events, and moderation actions identified in Attachment A or produced in discovery. Plaintiffs do not seek a broad, ongoing court-supervised content-moderation regime.

77. Monetary damages alone are inadequate because the specific identified accounts, records, screenshots, report histories, monetization logs, and sensitive identifying information can be lost, altered, reactivated, redistributed, or made unavailable without prompt preservation and narrowly tailored account-specific relief.

**PRAYER FOR RELIEF**

78. Plaintiffs Takia Marie Smith Nelson and her minor children, by and through Plaintiff as next friend, respectfully request that the Court enter judgment against Defendants Meta Platforms, Inc., TikTok Inc., Google LLC, and X Corp., jointly and severally where applicable, and award the following relief:

79. Impersonation, Reputational, and Dignitary Harm. Plaintiffs seek damages in an amount no less than $8,000,000 for impersonation, reputational, and dignitary harm caused by Defendants' failure to adequately respond to, correlate, and address the documented campaign of impersonation accounts, false accusations, and defamatory content targeting Plaintiff Takia Marie Smith Nelson across the Defendant platforms over a period of seventeen months. This category encompasses harm arising from the creation and reactivation of impersonation accounts including takia_marie_nelson_victim, the_370lb_liar, Takia Smith Nelson 2, Victim of Takia Marie Nelson, takia.nelson, takianelson, carolinejhingory522, and carolinejhingory2 across Meta, TikTok, and Threads platforms, the public dissemination of false accusations of criminal conduct and sexual misconduct, the association of Plaintiff's name and image with defamatory content across multiple platforms simultaneously, the forced restriction of Plaintiff's own social media accounts to private status to protect minor children's photographs, and the ongoing reputational harm caused by content that remains publicly available on YouTube and X as of the date of this filing despite repeated reports. Plaintiffs allege that Meta's own documented removal, clearance, and re-removal sequence for the same account within a five-month period, and TikTok's own documented clearance of reported content, directly contributed to the duration and severity of this harm.

80. Economic Harm From Employment Terminations. Plaintiffs seek damages in an amount no less than $4,500,000 for documented economic harm arising from two confirmed employment terminations causally connected to the campaign content hosted and inadequately addressed by Defendants. Plaintiffs allege that on or about March 17, 2025, Plaintiff's first employer terminated Plaintiff's employment after decisionmakers viewed campaign content hosted on Defendant platforms, and that on or about September 2, 2025, Plaintiff's second employer terminated Plaintiff's employment after similar exposure to campaign content. Plaintiffs allege that supervisors and decisionmakers specifically communicated to Plaintiff that the online content caused or contributed to each termination decision. This category encompasses lost wages, lost benefits, lost professional advancement opportunities, harm to professional reputation, and consequential economic losses arising from both terminations. Plaintiffs note that the March 17, 2025 first termination date corresponds precisely with TikTok's own system notification documenting a report of the Takia Smith Nelson 2 impersonation account on that same date, establishing the temporal connection between the documented campaign activity and the employment harm.

81. Emotional Distress and Psychological Harm. Plaintiffs seek damages in an amount no less than $6,000,000 for severe emotional distress and psychological harm sustained by Plaintiff Takia Marie Smith Nelson as a direct and proximate result of the seventeen-month documented campaign and Defendants' failure to adequately respond to repeated reports submitted through their own designated channels. This category encompasses the sustained psychological impact of watching false accusations, defamatory content, court records, mugshot images, and sensitive personal information remain publicly available on

Defendant platforms despite documented reports, the distress of having Plaintiff's Social Security number, home address, and date of birth published simultaneously on a social media platform, the psychological harm of observing platform review systems affirmatively clear content involving Plaintiff's children after specific notice, the impact of two employment terminations directly connected to platform-hosted content, and the ongoing distress of knowing that content involving Plaintiff's minor children remains publicly accessible as of the date of this filing. Plaintiffs allege that the documented duration, intensity, and cross-platform scope of the campaign, combined with the platforms' own records confirming repeated review and clearance of reported content, establish the severity and compensability of this harm.

82. Minor Children Harm. Plaintiffs seek damages in an amount no less than $20,000,000 for harm sustained by Plaintiff's minor children as a direct and proximate result of the campaign content hosted on Defendant platforms and Defendants' documented failure to adequately respond to reports involving minor children submitted through their designated child-safety and reporting channels. This category encompasses the following specific documented harms. First, TikTok's own system notification records document that TikTok affirmatively reviewed and cleared content on June 19, 2025, the date of the video falsely claiming Plaintiff's minor children were taken into CPS foster care, and returned a Status: No violations finding, constituting TikTok's own documented affirmative clearance of child-related content after specific notice. Second, Facebook's own support messages dated April 8, 2025 and April 22, 2025 document that Facebook affirmatively reviewed and declined to remove reported content connected to the same campaign involving Plaintiff's minor children. Third, content falsely claiming that

Plaintiff's minor daughter was recorded engaging in sexual activity at her high school, and content falsely claiming that Plaintiff's minor daughter was arrested for prostitution, was posted across TikTok, Instagram, Facebook, YouTube, X, and Threads between June 20 and September 2, 2025, and reported to each platform through designated child-safety channels. Fourth, content involving Plaintiff's minor children, including false child-welfare accusations, false sexualized content attributed to a minor child, and false criminal accusations directed at a minor child, remains publicly available on YouTube and X as of the date of this filing despite repeated reports. Fifth, a post on Instagram's Threads platform dated June 21, 2025 identified Plaintiff's minor daughter by family relationships to named third parties, attributed physical violence threats to the minor child, and tagged official law enforcement accounts including the DC Police Department and the Virginia Attorney General, creating a public record associating a minor child with allegations of violence that was published on a Meta platform and not removed. Plaintiffs allege that the documented affirmative clearance decisions by TikTok and Facebook regarding child-related content, combined with the continuing availability of child-related content on YouTube and X, and the cross-platform scope of false sexualized and false criminal content directed at a minor child, support the damages sought in this category.

83. Social Security Number and Sensitive Information Harm. Plaintiffs seek damages in an amount no less than $12,000,000 for harm arising from the documented publication of Plaintiff's full Social Security number, home address, date of birth, and a law enforcement officer's personal contact information and case number simultaneously in a single social media post, and Defendants' failure to detect, escalate, or act upon reports concerning sensitive personal identifying information submitted through their designated

reporting channels. This category encompasses the following specific harms. The documented publication of Plaintiff's full Social Security number constitutes one of the most severe privacy violations that can occur to a private individual, exposing Plaintiff to identity theft, financial fraud, and unauthorized access to government and financial records for an indefinite period following publication. The simultaneous publication of Plaintiff's home address creates ongoing personal safety risk to Plaintiff and her minor children. The simultaneous publication of a law enforcement officer's personal contact information, name, badge number, email address, and case number alongside Plaintiff's criminal complaint form constitutes doxxing of both Plaintiff and a law enforcement officer in a single post. Plaintiffs allege that each Defendant platform's failure to detect and respond to sensitive personal identifying information published in connection with the documented campaign, after specific and repeated notice through designated reporting channels, directly caused and continues to cause the harms described in this category. Plaintiffs further allege that the ongoing nature of identity theft and privacy exposure risk means that the harm in this category extends indefinitely beyond the campaign period.

84. Injunctive and Preservation Relief. Plaintiffs seek injunctive relief requiring each Defendant platform to immediately preserve all records related to the documented campaign including all internal report logs, account records, moderation decisions, review records, monetization records, and account-linkage data associated with the accounts and content identified in this complaint and Attachment A. Plaintiffs specifically request that Google LLC preserve all internal YouTube report logs including records of reports associated with content subsequently deleted by the content creator, as

those records are not accessible to Plaintiffs through YouTube's public-facing reporting history interface but exist within Google's internal systems and are material to this litigation. Plaintiffs further seek injunctive relief requiring the continued unavailability of specifically identified impersonation accounts and the preservation of records concerning identified content involving Plaintiff's minor children and sensitive personal information, to the extent such relief is permitted by law. Plaintiffs do not seek a broad, ongoing court-supervised content-moderation regime.

85. Attorneys Fees and Costs. Plaintiffs seek an award of reasonable attorney's fees and costs incurred in connection with this litigation to the extent permitted by applicable law.

86. Punitive Damages. Plaintiffs seek punitive damages in an amount no less than $50,000,000 against Defendants Meta Platforms, Inc., TikTok Inc., Google LLC, and X Corp., based on conduct Plaintiffs allege was malicious, fraudulent, oppressive, or in conscious disregard of Plaintiffs' rights and safety, to the extent such damages are permitted by applicable law. Plaintiffs allege that the following documented platform conduct supports punitive damages in this case. With respect to Meta, Meta's own written records document a cycle in which Meta removed the_370lb_liar account for harassment and bullying violations in July 2025, the account was reactivated, Meta's own review team affirmatively cleared the same account in December 2025 finding it did not violate Community Standards on impersonation, and Meta removed the same account again three days later for impersonation violations. With respect to TikTok, TikTok's own system notification records document that TikTok affirmatively reviewed and cleared reported content on June 19, 2025, the date of the video falsely claiming Plaintiff's minor children were taken into CPS foster care, and returned a Status: No violations finding after review.

TikTok's records further document affirmative no-violation findings across multiple reports during a period when reported content included false child-welfare accusations, false sexualized content attributed to a minor child, and an account whose name incorporated Plaintiff's full legal name as a harassment identifier. With respect to Google, Google's ad-serving and monetization systems generated and processed revenue on reported videos during a period when prior reports concerning the same campaign had been submitted, and Google's reporting history system allegedly erases user-submitted report records when content is deleted by the creator. Plaintiffs allege that the totality of documented platform conduct across all Defendants supports punitive damages sufficient to punish the conduct and deter similar conduct by these Defendants and the platform industry.

87. Total Damages Sought. Plaintiffs seek total damages in an amount no less than $100,500,000 plus injunctive relief, attorneys' fees, costs, pre-judgment and post-judgment interest, and such other relief as this Court deems just and proper.

Respectfully submitted,

Takia Marie Smith Nelson

Plaintiff, Pro Se

Individually and as Proposed Next Friend of J.E.N., L.M.N.N., M.E.S., and B.M.J.

3489 Beale Court

Dale City, VA 22193

571-715-6716

t.smith@thebankslf.com

CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, I caused a true and correct copy of the foregoing

Plaintiffs' First Amended Complaint for Damages, Preservation Relief, Narrow Injunctive

Relief, and Jury Demand to be served on all counsel of record via the Court's CM/ECF

system, which will send notice of such filing to all registered counsel of record.

Takia Marie Smith Nelson

Plaintiff, Pro Se

Individually and as Proposed Next Friend of J.E.N., L.M.N.N., M.E.S., and B.M.J.

3489 Beale Court

Dale City, VA 22193

571-715-6716

t.smith@thebankslf.com